USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 2/25/14

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - X

RONALD W. BURKLE,

                 Plaintiff,

      - against -

OTK ASSOCIATES, LLC, a Delaware Limited
Liability Company, JASON T. KALISMAN,
MICHAEL E. OLSHAN, ANDREA L. OLSHAN,
MAHMOOD KHIMJI, JONATHAN LANGER,
PARAG VORA and JOHN T. DOUGHERTY,

                 Defendants.

- - - - - - - - - - - - - - - - - - X

13 Civ. 4557 (LLS)

OPINION & ORDER

Defendants, OTK Associates and its seven nominees for the
board of directors of Morgans Hotel Group Co. ("Morgans"), move
to dismiss this diversity action against them, which claims they
issued a false and misleading proxy solicitation that violated
Section 14(a) of the Securities Exchange Act and Securities and
Exchange Commission Rule 14a-9.  The motion is made under Fed.
R. Civ. P. 12(b)(6) for failure to state a claim upon which
relief can be granted.

Defendants argue that the challenged misstatements in OTK's
press release were so fully reported and discussed by other
sources that the inaccuracies in OTK Associates' press release
would not have significantly affected the proxy contest's
outcome.

Plaintiff Ronald Burkle, a former member of the Morgans'

- 1 -

board of directors, lost his seat on the board when all OTK

candidates were elected in a June 14, 2013 shareholder election

ordered by the Delaware Court of Chancery.  He alleges that

defendants issued a false and materially misleading proxy

solicitation on June 5, 2013, seeking to vote the incumbent

board (including Burkle) out of office and replace them.

Specifically, Burkle claims that the press release

published by defendants nine days before the election

misrepresented the conclusions of Institutional Shareholder

Services Inc. ("ISS") and Glass Lewis & Co. ("Glass Lewis"),

two leading proxy advisory firms which make voting

recommendations to shareholders in proxy contests.  Burkle

contends that the press release was misleading because it

omitted the complete commentary of the ISS and Glass Lewis

reports:

> Each of the advisory firms had unequivocally concluded that
> Morgans would best be served by retaining a four-director
> majority of the Company-nominated directors on the Board,
> and electing a minority of three of the Defendants to the
> Board.  Defendants' proxy solicitation materials materially
> misrepresented the advisory firms' conclusions, describing
> them as if the proxy advisory firms had concluded that
> shareholders should vote the entire incumbent Board out of
> office and deliver control to the Defendants.

Compl. ¶ 1.

The headline of OTK's press release asserted: "Leading

Proxy Advisory Firms ISS and Glass Lewis Both Reject Entirety of

Morgans Hotel Group's Slate of Nominees and Definitively

Recommend Vote for Change on OTK's Gold Card."   Welsh Decl., Ex.

E at 1.   The press release's text stated:

> OTK Associates, LLC ("OTK"), the largest shareholder of
> Morgans Hotel Group Co. ("Morgans") (Nasdaq: MHGC) with
> 13.9% of the outstanding common stock of the company, today
> announced that two leading proxy advisory services,
> Institutional Shareholder Services Inc. ("ISS") and Glass
> Lewis & Co. ("Glass Lewis") have both decisively advised
> Morgans' stockholders to vote the GOLD proxy card.   In
> separate reports issued on June 4, 2013, ISS recommends
> stockholders vote **"FOR"** Jason Kalisman, Mahmood Khimji and
> Jonathan Langer, while Glass Lewis recommends stockholders
> vote **"FOR"** John Dougherty, Jason Kalisman and Mahmood
> Khimji, for election to Morgans' board of directors at the
> company's upcoming annual meeting of stockholders on June
> 14, 2013.   ISS and Glass Lewis were equally as decisive in
> recommending a "Do Not Vote" for each and every member of
> management's slate.

Id.

In fact, ISS's report recommended that three of the seven

OTK candidates should be elected to the Morgans board, stating:

- OTK Associates, which holds 13.9% of shares, is
  seeking to replace all 7 directors on the board of
  Morgans Hotel Group and elect its 7 nominees in their
  stead.
- The dissidents have made compelling case [sic] for
  minority change at the board level.   Shareholder
  support for dissident nominees Kalisman, Langer and
  Khimji is warranted.

Ex. F. at 1.

Glass Lewis also endorsed the election of three of the OTK

nominees in its report.   It said:

> In this case, we believe the Dissident has identified areas
> of concern, both operationally and governance related, that
> have resulted in the destruction of shareholder value and,
> at times, the disregard of shareholder interests.   We are
> concerned that the current control and stewardship of the

Company largely reside with one individual, Mr. Burkle. However, we aren't convinced that turning complete control of the board over to the Dissident's full slate of nominees, another group of inter-connected individuals who may also be conflicted, would likely result in a superior outcome for Morgans shareholders at this time. Yet, some board changes appear to be necessary. [Ex. G at 13].

* * *

Thus, in our view, it doesn't appear that maintaining the status quo on the board is likely to result in a substantially different outcome for shareholders. Though some developments give us cause to be optimistic, we believe that the board could be improved with the addition of new directors who possess relevant industry experience and aren't beholden to the influence of Mr. Burkle or Yucaipa. We also believe that Mr. Kalisman should maintain his role as OTK's current representative on the board. In our opinion, Messrs. Dougherty and Khimji are the two strongest nominees on the Dissident slate, based on their significant hotel management and real estate experience and their ancillary ties to either the Olshan or Taubman families, as opposed to the more direct ties of actual family members.

Ordinarily we might believe that the optimal board structure for the company would consist of two Yucaipa nominees, one OTK nominee and four truly independent directors. But in this case, due to the influence of Mr. Burkle and Yucaipa, as well as the Company's past performance and governance practices, as well as the apparent lack of relevant industry experience at the Company, we believe a more balanced board structure consisting of the largest debt holder's nominees and the largest shareholder's nominees is more appropriate. In our opinion, a board consisting of four of the Company's nominees and three of the Dissident's nominees would restore balance to the board and improve the likelihood that the board would act in the best interests of all shareholders as it seeks to enhance the Company's performance. Based on these factors, we believe shareholders should support the election of three Dissident nominees to the board.

Ex. G at 17-18.

- 4 -

Burkle alleges that the headline of OTK's press release was
materially misleading: "This headline egregiously misrepresented
the recommendations of the proxy advisory firms, stating that
they 'reject[ed]' the entire board slate, when in fact they
concluded that a majority of the board slate <u>should remain on</u>
<u>the board</u> and that only a <u>minority</u> of the OTK nominees should be
elected."  Pl. Opp. at 5 (emphasis in original).

Burkle also claims that the press release's body
misrepresented ISS and Glass Lewis' recommendations:

> The Solicitation stated that ISS and Glass Lewis
> recommended election of three OTK nominees, but
> misleadingly omitted to state that they recommended voting
> "WITHHOLD" on the remaining four.  ¶¶ 25-27, 32.
> The Solicitation misleadingly failed to disclose ISS's
> conclusion that OTK failed to make "a case for sweeping
> majority change" and that only the "additive" election of
> two more OTK candidates was appropriate.  ¶ 30.
> The Solicitation reproduced two full paragraphs critical of
> Morgans' past performance from a section of the ISS report
> entitled "ISS CONCLUSION – IS CHANGE NEEDED?" but omitted
> the final paragraph that explicitly rejected OTK's "case
> for sweeping majority change."  ¶ 31.
> The Solicitation did not use an ellipsis (". . .") or
> otherwise indicate that it omitted ISS' conclusion.  <u>Id.</u>
> The Solicitation quoted Glass Lewis' concerns regarding
> Yucaipa's and Plaintiff's connections to the incumbent
> board but excised <u>the very next sentence</u> in which Glass
> Lewis concluded that "we aren't convinced that turning
> complete control of the board over to the Dissident's full
> slate of nominees, another group of inter-connected
> individuals who may also be conflicted, would likely result
> in a superior outcome for Morgans shareholders at this
> time."  ¶ 32.  Here again, Defendants did not indicate that
> this key sentence was omitted.
> The Solicitation omitted entirely Glass Lewis's central
> conclusion: the advisory firm's endorsement of a "more
> balanced board structure" including "four of the Company's
> nominees and three of the Dissident's nominees."  <u>Id.</u>

Pl. Opp. at 5-6 (italics in opp.; its ¶¶ references are to the complaint).

## DISCUSSION

While defendants argue that OTK's press release should be read in a way that makes it technically accurate, on the whole its ordinary and natural meaning misrepresented and omitted significant portions of the ISS and Glass Lewis reports. However, the misrepresentations and omissions are rendered immaterial because (due to contemporaneous publications which accurately and clearly stated the ISS and Glass Lewis reports) they would not have significantly affected a reasonable shareholder's voting decisions.

In TSC Indus., Inc. v. Northway, Inc., 426 U.S. 438, 96 S. Ct. 2126 (1976), the Supreme Court formulated the standard of materiality under Rule 14a-9:

> The general standard of materiality that we think best comports with the policies of Rule 14a-9 is as follows:  An omitted fact is material if there is a substantial likelihood that a reasonable shareholder would consider it important in deciding how to vote.  This standard is fully consistent with Mills general description of materiality as a requirement that "the defect have a significant propensity to affect the voting process."  It does not require proof of a substantial likelihood that disclosure of the omitted fact would have caused the reasonable investor to change his vote.  What the standard does contemplate is a showing of a substantial likelihood that, under all the circumstances, the omitted fact would have assumed actual significance in the deliberations of the reasonable shareholder.  Put another way, there must be a substantial likelihood that the disclosure of the omitted

fact would have been viewed by the reasonable investor as
having significantly altered the "total mix" of information
made available.

Id. at 449, 96 S. Ct. at 2132, quoting Mills v. Electric Auto.

Lite Co., 396 U.S. 375, 384, 90 S. Ct. 616, 621 (1970) (emphasis

in Mills).

The Second Circuit has stated:

Materiality is a mixed question of law and fact, e.g., TSC
Industries, Inc., 426 U.S. 438, 450, 96 S. Ct. 2126, 2133,
48 L.Ed.2d 757 (1976), and a complaint may be not be
properly be dismissed pursuant to Rule 12(b)(6) (or even
pursuant to Rule 56) on the ground that the alleged
misstatements or omissions are not material unless they are
so obviously unimportant to a reasonable investor that
reasonable minds could not differ on the question of their
importance.

Goldman v. Belden, 754 F.2d 1059, 1067 (2d Cir. 1985).

Such questions of mixed law and fact are not normally

disposed of on a motion to dismiss, but are reserved for

dismissal on summary judgment or at trial.

In Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937 (2009),

the Supreme Court made clear that pleadings must meet a

"plausibility" standard in order to survive a motion to dismiss:

To survive a motion to dismiss, a complaint must contain
sufficient factual matter, accepted as true, to "state a
claim to relief that is plausible on its face." Id., at
570, 127 S. Ct. 1955. A claim has facial plausibility when
the plaintiff pleads factual content that allows the court
to draw the reasonable inference that the defendant is
liable for the misconduct alleged. Id., at 556, 127 S. Ct.
1955. The plausibility standard is not akin to a
"probability requirement," but it asks for more than a
sheer possibility that a defendant has acted unlawfully.
Ibid. Where a complaint pleads facts that are "merely

consistent with" a defendant's liability, it "stops short
of the line between possibility and plausibility of
'entitlement to relief.'"  Id., at 557, 127 S. Ct. 1955
(brackets omitted).

* * *

Determining whether a complaint states a plausible claim
for relief will, as the Court of Appeals has observed, be a
context—specific task that requires the reviewing court to
draw on its judicial experience and common sense.  490
F.3d, at 157—158.  But where the well-pleaded facts do not
permit the court to infer more than the mere possibility of
misconduct, the complaint has alleged—but it has not
"show[n]"—"that the pleader is entitled to relief."  Fed.
Rule Civ. Proc. 8(a)(2).

In keeping with these principles a court considering a
motion to dismiss can choose to begin by identifying
pleadings that, because they are no more than conclusions,
are not entitled to the assumption of truth.  While legal
conclusions can provide the framework of a complaint, they
must be supported by factual allegations.  When there are
well-pleaded factual allegations, a court should assume
their veracity and then determine whether they plausibly
give rise to an entitlement to relief.

Id. at 679, 129 S. Ct. at 1950, quoting Bell Atlantic Corp.

v. Twombly, 550 U.S. 544, 127 S. Ct. 1955 (2007).

    Here, the pleadings and the parties' submissions set forth

factual matters about which there is no dispute.  The actual

statements of the parties and the news media are before the

Court.

    In the context of a proxy contest,

The "total mix" of information may also include
"information already in the public domain and facts known
or reasonably available to the shareholders."  Rodman v.
Grant Foundation, 608 F.2d 949, 952 (2d Cir. 1978).  Thus,
when the subject of a proxy solicitation has been widely
reported in readily available media, shareholders may be

- 8 -

deemed to have constructive notice of the facts reported, and the court may take this into account in determining whether representations in or omissions from the proxy statement are materially misleading.

United Paperworkers Int'l Union v. Int'l Paper Co., 985 F.2d

1190, 1199 (2d Cir. 1993).

In the days following the election, major media outlets as well as industry publications reported that ISS and Glass Lewis had recommended a vote for only three of OTK's seven nominees for the Morgans board:

- Hotel News Business Report reported that "Glass Lewis & Co. & Institutional Shareholder Services (ISS) were split on the dispute between Morgans Hotel Group and OTK Associates.  The two firms recommended shareholders vote for three of seven OTK shareholders rather than all seven."  Glass Lewis, ISS Split on Morgans-OTK Dispute, Hotel Business News Alert - North American, AirGuideBusiness.com, June 10, 2013, Welsh Decl., Ex. N.

- Dow Jones News Service reported that "Proxy advisors Institutional Shareholder Services Inc. and Glass Lewis & Co. backed three of OTK Associates LLC's nominees for luxury-hotel operator Morgans Hotel Group Co's (MHGC) board, giving Morgans's largest shareholder a boost of support just before the company's annual meeting."  Ben Fox Rubin, ISS, Glass Lewis Back Three of OTK's Board Nominees at Morgans Hotel, Dow Jones News Service, June 4, 2013, Welsh Decl., Ex. O.

- SNL Real Estate Weekly reported that "The advisory firms said they support three of activist shareholder OTK Associates' nominees for Morgans Hotel's board, while Morgans Hotel issued a press release that failed to note the advisory firms' recommendation against all of its own nominees."  Joseph Williams, Glass Lewis, ISS issue recommendations against Morgans Hotel director nominees, support 3 OTK Associates Candidates, SNL Real Estate Weekly, June 10, 2013,

Welsh Decl., Ex. P.

- *Reuters* reported that "Two influential proxy advisor firms, Institutional Shareholder Services (ISS) and Glass Lewis & Co. last week said they supported three of the OTK nominees, which suggests the shareholder voting may not be one-sided." Bijoy Anandoth Koyitty, *Morgans Hotel board gains upper hand ahead of proxy vote*, Reuters, June 13, 2013, Welsh Decl., Ex. Q.

- *Bloomberg* reported that "Morgans Hotel Group Co. (MHGC) investors should vote for three of the seven board nominees put forth by the company's largest stockholder, OTK Associates LLC, according to two shareholder-advisory firms." Brian Louis & Nadja Brandt, *Proxy Firms Recommend Three OTK Nominees to Morgans Board*, Bloomberg.com, June 5, 2013, Welsh Decl., Ex. R.

Thus, five news articles expressly disclosed and addressed the actual reports which the OTK press release had misrepresented, and made clear to the public that ISS and Glass Lewis endorsed electing three of OTK's candidates to the Morgans board rather than voting the entire incumbent board out of office. So far, it seems clear that the misleading effect of OTK's press release (which claimed ISS and Glass Lewis "decisively advised" shareholders to vote for OTK's entire slate of seven nominees) was dissipated and counteracted by those reports, which were widely disseminated and supplied the "total mix" of information that their press release omitted.

However, since documents other than the pleadings form the basis for above conclusion, the motion is converted to one for summary judgment under Fed. R. Civ. P. 56, and the parties have

30 days within which to make submissions of any "material that

is pertinent to the motion" (Fed. R. Civ. P. 12(d)) in addition

to the material already before the Court, so that the

determination of the point may rest upon all the factual and

legal considerations material to a motion for summary judgment,

including whether genuine issues of material fact preclude its

grant.

    So ordered.

Dated: New York, New York
       February 24, 2014

                               _Louis L. Stanton_____
                                   Louis L. Stanton
                                   U.S.D.J.